IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KAREN LOUISE BRUNETTE,

                Plaintiff,

      v.

ANDREW SAUL,
Commissioner of Social Security,

              Defendant.

OPINION AND ORDER

18-cv-741-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Karen Louise Brunette is seeking review of a final decision denying her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). She contends that she has been unable to work since July 30, 2014 because of three severe medical impairments of left shoulder tendinitis, degenerative joint disease and fibromyalgia, and the mental impairment of anxiety.

      The Social Security Administration denied plaintiff's application for benefits, initially and on reconsideration. After plaintiff filed a request for a hearing, an administrative law judge found that, although plaintiff could no longer perform heavy work as a certified nurse assistant, she would be able to perform the job of certified nurse assistant if she worked at a medium level, as that job is generally performed. In addition, the administrative law judge concluded that plaintiff could also perform other jobs at the lower, light, level of work. After the Appeals Council upheld this decision, plaintiff brought this civil action, seeking reversal

1

or remand of the commissioner's decision to deny her claim for disability insurance benefits under § 216(i) and § 223(d) of the Social Security Act. Plaintiff contends that the administrative law judge erred in a number of respects and that her claim should be returned to the commissioner for further consideration. From my review of the record, I conclude that it fails to show that either plaintiff's anxiety or her medical problems are sufficiently severe to support a finding that she is disabled for Social Security purposes.

The following facts are drawn from the administrative record (AR).

## FACTS

### A. Plaintiff's Social Security Application

Plaintiff filed an application for disability insurance benefits on April 30, 2015, alleging disability as of July 30, 2014, when she was 52 years old. AR 82. According to plaintiff, she had worked as a certified nurse assistant from May 1998 through April 2014, AR 30, but she did not perform substantial gainful activity after her July 30, 2014 onset date. The Social Security Administration determined that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019.

### B. Administrative Hearing

#### 1. Plaintiff's testimony

At the June 22, 2017 hearing before the administrative law judge, plaintiff testified that she had completed high school, was married and had a certified nurse assistant degree

that was currently inactive. AR 41-42. In 2012, she had received a diagnosis of breast cancer and had had a lumpectomy, AR 62, followed by radiation and chemotherapy. Id. She worked in that year, as well as in 2013 and, for a few months in 2014, but has not worked since 2014, other than for a short time in 2015. AR 42. She stopped then because of pain that had worsened after her chemotherapy. Id. She believes that her fibromyalgia and arthritis are the present causes of her inability to work. AR 43-44.

Plaintiff said that she took Tramadol[1] for her pain from headaches that she experienced at least four times a week. AR 44-45. In addition, she had problems with her memory and suffered from degenerative joint disease for which she wore a neck brace when needed. AR 45. Her left shoulder seemed to be causing her more pain that her right one and she thought this might be a result of rotator cuff surgery she had had 15 years earlier. Id. She said her back was always in pain and she often felt as if both her upper and lower back were burning, and her hips always hurt. Id. She had costochondritis[2] "a couple of times a month," which made her feel as if she were having a heart attack. She believes this condition is a result of her fibromyalgia. Id.

Plaintiff has diverticulitis and bowel problems, AR 46, but she does not list these as

_____

[1] Tramadol belongs to the group of medicines called opioid analgesics, which are used to relieve moderate to moderately severe pain, .https://www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description/drg-20068050 (consulted 9/25/19, as were all other footnotes).

[2] Costochondritis is an inflammation of the cartilage that connects a rib to the breastbone (sternum), https://mayoclinic.org/diseases-conditions/costochondritis/symptoms-cases/syc-20371175

reasons for her inability to work. She has fallen on a few occasions, although she says she has always been able to get up again, even when her husband is not around to help her. Id. Her fibromyalgia affects her ability to pick things up, AR 47, and also causes her pain that interferes with her sleep at night, so she naps during the day. Id. Often, when she wakes up, she cannot get up immediately and will sit at the edge of the bed for a couple of minutes before getting herself a cup of coffee. Id. She sits in her recliner for most of the day, except for walking around to keep herself from getting too stiff. Id. She can make herself lunch and go shopping for groceries with her husband. Id. She experiences neck pain that sometimes spreads out to her hands, causing her to lose her grip on things. Id.

In addition to Tramadol, plaintiff takes Letrozole[3], which is used to treat breast cancer, and Prilosec,[4] for nausea. AR 48. Her doctors have encouraged her to get out and walk and she tries to go out each night with her husband and walk around the block. AR 49. (At AR 58, she amended the frequency of her walks to "every other night.") After walking around the block, her upper back and knees hurt and she stops. AR 50.

---

[3]Letrozole is used to treat certain types of breast cancer. https://www.mayoclinic.org/drugs-supplements/letrozole-oral-route/description/drg-20067579.

[4] Prilosec is used to treat certain stomach and esophagus problems, such as acid reflux and ulcers. https://www.webmd.com/drugs/2drug-77588/prilosec-otc-oral/details.

Plaintiff has never had any EMG[5] testing, She has a TENS[6] unit that she uses to relieve her pain. She finds that it helps, at least while it is on. AR 53. She tried physical therapy for a short time, but found that it only made her condition worse. AR 55. She sees someone every three months for pain management. Id. She can stand for only 10 to 15 minutes at a time, so she cannot make full meals; her husband does that for her, along with the rest of the household chores. AR 56. Plaintiff's two grown daughters stop in regularly to help, id., and twice a week one of them helps plaintiff help her wash her hair, because lifting her arms and shoulders causes her pain. AR 58. Plaintiff believes that her neck, shoulder and fibromyalgia are worse now than they have been. Id.

2. Vocational expert's testimony

Vocational expert Valerie Williams (referred to as "Holly Williams" in the transcript of the administrative hearing) assessed plaintiff's former job as a certified nurse assistant, which is generally classified as requiring medium strength, but Williams said it would be classified as "heavy" as plaintiff had performed it. AR 65. In Williams's opinion, plaintiff could perform the job as it is generally performed at the medium exertional level as defined in the Social Security Regulations, with the additional limitations that the hypothetical

---

[5]EMG is electromyography that measures muscle response or electric activity in response to a nerve's stimulation of the muscle. https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/electromyography-emg.

[6]TENS refers to a transcutaneous electrical nerve stimulation unit, which is a back pain treatment that uses low voltage electric current to relieve pain. https://webmd.com/back-pain/guide/tens-for-back-pain.

individual plaintiff could occasionally climb ramps and stairs but could never climb ladders, ropes or scaffolds and could occasionally kneel, stoop, crouch and crawl. AR 66. Otherwise, if the person was capable only of working work at a light level, there would be no transferable skills from the certified nurse assistant position, but such a person could work as a ticket taker, cashier II or fast food worker. AR 66-67. In the first category, there would be 65,000 jobs nationally; in the second category, there would be 560,000 jobs; and in the third category, there would be 750,000 jobs. However, if the person had to take unscheduled breaks of at least 30 minutes each day because of pain and fatigue, the person could not perform any jobs of which the vocational expert was aware. AR 67.

### C. Plaintiff's Medical Record

1. Plaintiff's physical problems

   a. Dr. Laura Wyer

At a May 2014 appointment, plaintiff's doctor, Laura Wyer, listed plaintiff's medical problems as including chronic pain syndrome, fibromyalgia (which had been diagnosed in 1999), nausea with vomiting, left shoulder pain and breast invasive ductal carcinoma. AR 387-91. On July 29, 2014, Dr. Wyer prescribed a number of medications for plaintiff, including a course of oxycodone-acetaminophen three times a day, with Percocet[7] for

---

[7]Percocet is a brand name for oxycodone-acetamininophen; https://www.mayoclinic.org/drugs-supplements/oxycodone-and-acetaminophen-oral-route/description/drg-20074000.

breakout pain and Lorazepam[8] for muscle relaxation and tension.  AR 414.

b. Dr. Randal Vosters

On September 3, 2014, plaintiff saw a sports medicine specialist,  Dr. Randal Vosters, for an evaluation of her left shoulder pain.  AR 404-06.  The doctor suspected rotator cuff impingement and secondary AC joint inflammation.  AR 406.  He recommended that plaintiff apply ice to the affected area up to five times a day and complete her home exercise program as recommended.  AR 406.

c. Dr. Niravkumar Naik

Plaintiff saw Dr. Niravkumar Naik, the oncologist who had been treating her breast cancer, on October 7, 2014.  She told him she had had nausea and frequent vomiting over the preceding two months and an increase in fibromalgia-related pain.   AR 478-79.  The doctor recommended a EGD (esophagoscopy gastroscopy duodenoscopy) and a referral to a gastroenterologist.  AR 480.  Plaintiff returned to Dr. Naik on January 5, 2015, reporting fibromyalgia and significant fatigue.  AR 481-82.  The doctor discussed with her the importance of a regular exercise regimen.  AR 483.

d. Dr. William McDevitt

---

[8] Lorazapam is one of a group of drugs known as benzodiazepines that are used to treat anxiety. https://www.mayoclinic.org/drugs-supplements/lorazepam-oral-route/side-effects/drg-20072296?p=1.

On October 29, 2014, plaintiff saw Dr. William McDevitt for an evaluation of her ongoing left shoulder pain. AR 396. He found that plaintiff had essentially normal range of motion, with "pain in the arc of 80 to 120 degrees of abduction," and basically normal rotator cuff strength, and he gave her a cortisone injection in her left shoulder. AR 396-97.

e. Dr. Eric Conradson

Plaintiff began seeing Dr. Eric Conradson in place of Dr. Wyer on April 22, 2015. AR 512. Dr. Conradson noted that plaintiff had had moderate fibromyalgia for more than a year, "controlled with PRN OTC NSAID, narcotics, with partial relief of trigger point pain and fatigue with no complications or seizures or loss of consciousness." Id. He also found that plaintiff had "chronic continuous mild arthritis" and "tenderness in both knees." AR 513. The doctor referred plaintiff to physical therapy, which she pursued between October 2015 and January 2016, but she reported to her doctor that her chronic pain persisted. AR 590-654.

On January 6, 2016, Dr. Conradson diagnosed diverticulitis and rectal bleeding, AR 665. He noted that plaintiff had been experiencing moderate fibromyalgia for more than one year that was controlled with narcotics, with complete relief of trigger point pain and fatigue with no complications of seizures or loss of consciousness. AR 672. She also suffered chronic, frequent mild migraine headaches for more than one year and chronic, continuous, moderate insomnia, for which she took a benzodiazepine. AR 673. On January 19, 2016,

Dr. Conradson listed the medications plaintiff was taking, including Norco[7] and Mobic,[8] among others.  AR 718-19.

In April 2016, the doctor noted that plaintiff's left shoulder had been causing her moderate pain for more than a year with acute aggravation "with left lateral decubitus position."  AR 733.  Plaintiff had not mentioned this left shoulder pain in earlier examinations, e.g., Apr. 22, 2015, AR 512-13;  Sept. 16, 2015, AR 557; Jan. 6, 2016, AR 671.

f. X-rays

On January 6, 2016, plaintiff had x-ray studies of her cervical spine, which revealed various degenerative changes, all of which were assessed as "mild," with asymmetric degenerative changes at C4-5, C5-6 and C6-7.  AR 588-89.  On January 21, 2016, Dr. John Heighway reviewed x-rays of plaintiff's knees and found no abnormalities on either side and only modest degenerative changes in the medial compartment of each knee.  AR 580.

g. Dr. Jaswinder Sidhu

Plaintiff began seeing Dr. Sidhu on August 3, 2016.  On examination, the doctor found

---

[7]Norco is a narcotic analgesic that acts on the central nervous system. https://mayoclinic.org/drugs-supplements/hydrocodone-and-acetimophen-oral-route/description/drg-2007408.

[8]Mobic is a nonsteroidal anti-inflammatory drug used to relieve the symptoms of arthritis. https://www.mayoclinic.org/drugs-supplements /meloxicam-oral-route/description /drg-20066928.

plaintiff's neck supple, AR 760, her range of motion normal over all extremities, no gait instability and normal coordination. AR 761. He discontinued the hydrocodone she had been taking for her fibromyalgia, saying there was no evidence that opioids improved fibromyalgia symptoms. AR 762. Dr. Sidhu saw plaintiff again in January 2017 and noted that she continued to experience fibromyalgia flares, including costochondritis, cervical degenerative joint disease and that reaching and lifting aggravated her left shoulder arthritis. AR 774-75. When he saw plaintiff again in April 2017, he noted that these problems continued. He suggested that plaintiff see an orthopedist but she said she could not afford one. AR 799. Although she complained of chronic fatigue secondary to her fibromyalgia, Dr. Sidhu found that she was "doing well for her multiple medical problems." AR 807.

2. Plaintiff's mental problems

In June 2015, plaintiff met with Dr. Anthony Wendorf, a consultative psychologist. The doctor's opinion was that, although plaintiff had denied any anxiety, she was struggling with anxiety and depression and would benefit from individual psychotherapy, "to help her with transition in her life and help her remit some of these fairly mild psychiatric symptoms, which are due to the medical complaints." AR 532. He found that plaintiff had only fair ability to understand, remember and carry out simple work instructions and to respond appropriately to supervisors and coworkers. AR 533. He assessed her ability to maintain concentration, attention and work pace as poor and her ability to withstand routine work stresses and adapt to changes as fair to poor. Id.

## 2. Dr. Deborah Pape

DDS consultant Dr. Pape reviewed plaintiff's record and determined that plaintiff had an affective disorder that "did not precisely satisfy the diagnostic criteria" for Affective Disorders, 2960, or for Anxiety Disorders, 3000. AR 74. Dr. Pape characterized plaintiff's mental impairments as "severe," but found that plaintiff had no limitations in the activities of daily living, no limitations in social functioning, moderate limitations in concentration, persistence or pace and no episodes of decompensation. Id. She also found that plaintiff was not significantly limited in remembering locations and work-like procedures, in understanding and remembering very short and simple instructions, but was moderately limited in carrying out detailed instructions, in maintaining attention and concentration for expended periods and in performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances. AR 77-78.

## 3. Dr. Stacy Fiore

Dr. Fiore, a second consulting psychologist, reviewed plaintiff's record at the reconsideration level in November 2015 and found that plaintiff had mild limitations in activities of daily living and in social functioning, moderate limitations in concentration, persistence and pace and no episodes of decompensation. AR 88. Dr. Fiore gave little weight to a consultative examiner psychologist opinion that plaintiff had poor ability to concentrate and persist, fair ability to understand and carry out simple instructions and poor to fair ability to withstand workplace stress or adapt to changes. AR 93. Instead, she found that plaintiff

could understand, remember and carry out detailed but not complex instructions, make detailed decisions, attend and concentrate for two hours at a time on complex instructions, interact adequately with co-workers and supervisors, handle occasional contact with the public and respond appropriately to changes in a work setting.  Id.

### D. State Agency Reviewers

#### 1. Dr. Mina Khorshidi

Mina Khorshidi, M.D., a non-examining state agency physician, reviewed plaintiff's medical records in June 2015.  She noted in her April 20, 2015 treatment notes that plaintiff was "doing very well," AR 73 and that plaintiff's cancer was no longer considered a  medically disabling impairment, AR 74.  It was her opinion that plaintiff could handle work at a moderate level; that she could "occasionally," that is, for 1/3 or less of an eight hour day,  lift or carry 50 pounds, frequently lift or carry 25 pounds, stand or walk with normal breaks for six hours in an eight-hour workday, sit with normal breaks for a total of six hours and push or pull or both without limitations.  AR 76.  She found that plaintiff had no postural, manipulative, visual, communicative or environmental limitations.   AR 77.

Dr. Khorshidi assessed plaintiff's thought content as linear and logical, her stream of mental activity as normal and her remote memory as good.  Plaintiff could follow a three-step command, socialize with family and friends and did not evidence any withdrawal, isolation, temper, impulsivity or paranoid thinking.  Her concentration, persistence and pace were judged to be fair at best.  AR 73-74.   Dr. Khorshidi said she was giving great weight to Dr.

Wendorf's assessment of plaintiff, noting that plaintiff's work-related limitations were not inconsistent with his examination; plaintiff had "more moderate limitations" related to concentration, persistent and pace; and plaintiff herself had said she was "OK" as far as following written and spoken instructions.  AR 76.  The doctor added that plaintiff would benefit from individual psychotherapy to "help her with transitions in her life and to help her remit some of these fairly mild psychiatric [symptoms], which are secondary to the medical complaints."  Id.

## 2. Dr. Pat Chan, M.D

In January 2016, Pat Chan, M.D., another non-examining state agency physician, concluded that plaintiff was capable of performing a wide range of *light,* semiskilled work.  AR 88.  He said an additional vocational assessment would be required to determine whether plaintiff was capable of performing her past relevant work as it is generally performed in the national economy.  Id.  Dr. Chan found plaintiff had mild insomnia, moderate fibromyalgia and moderate arthritic pain in both knees.  AR 87, 91.  He assessed plaintiff's anxiety disorder as severe.  AR 88.

## E. Administrative Law Judge's Decision

The administrative law judge denied plaintiff's application for disability insurance benefits in a written opinion issued on July 13, 2017, finding that, although plaintiff had the severe impairments of left shoulder tendinitis, degenerative joint disease and fibromyalgia, she

was still capable of performing work at a medium level, with certain restrictions. Specifically, she could climb stairs or ramps only occasionally, could never climb ladders, ropes or scaffolds, could frequently balance, but only occasionally kneel, stoop, crouch or crawl. AR 26. She was capable of performing work as a certified nurse assistant at the medium level, as the job is ordinarily performed, but not at the heavy level at which plaintiff had been performing it in her prior employment. AR 30.

The administrative law judge concluded that plaintiff's severe impairments did not meet or equal a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App. 1, whether they were considered together or separately, AR 25-26, and that plaintiff's statements about fibromyalgia's intensity, persistence and limiting effects were inconsistent with the medical evidence and other evidence in the record. AR 27. Instead, the medical evidence supported a finding that plaintiff could do medium work with postural limitations. Id.

Addressing plaintiff's physical limitations, the administrative law judge noted that plaintiff's diagnostic tests revealed no acute or chronic abnormalities in her left shoulder, such as abnormal calcifications, or in her joints, such as gait instabilities. Id. Also, plaintiff had no joint crepitus (popping or crackling sound in her joints), had demonstrated normal range of motion of her knees and normal coordination, and none of the medical providers she had seen had recommended any further surgery for her left shoulder pain. Id.

The administrative law judge acknowledged that plaintiff has a long history of fibromyalgia, a "chronic musculoskeletal disorder that is characterized by 'pain, muscle stiffness, pervasive fatigue and non-restorative sleep' and often has 'an absence of abnormal

diagnostic findings and laboratory tests,'" AR 24, and that she has a history of pain in all quadrants of the body and axial skeletal pain that has been present for at least three months, as well as pain that has been present in at least 11 of 18 identified trigger point sites. However, her fibromyalgia was described as generally stable, AR 28, and she reported good results with her TENS unit. Id.

From these findings and plaintiff's reports of having doing well overall, including walking regularly for exercise, the administrative law judge concluded that she was capable of doing medium work, as defined in 20 C.F.R. § 404.1567(c), with additional postural limitations to take into account her "reduced left shoulder range of motion, tender left shoulder, crepitus of bilateral knees, tender knees and mild arthralgic knee pain, as well as moderately tender points "diffusely present bilaterally over all extremities." AR 28.

The administrative law judge gave significant weight to Dr. Khorshidi's opinion that plaintiff could perform medium work, but little weight to Dr. Chan's opinion that plaintiff was limited to light work, finding that the latter's opinion was not consistent with the evidence in the record. Dr. Chan had not taken into account the fact that plaintiff's diagnostic tests had revealed no acute or chronic abnormalities, her examinations had shown benign findings, she responded well to conservative treatment and her impairments had been described as stable. AR 29.

Addressing plaintiff's mental problems, the administrative law judge found that, in addition to plaintiff's three severe medical impairments, she had the non-severe impairment of anxiety disorder, which did not cause her any more than minimal limitations on her ability

to perform basic mental work activities. AR 24. Although plaintiff had been prescribed medication for anxiety by her primary care physician, the record did not show that she had had any inpatient hospitalizations for uncontrolled symptoms or outpatient mental health treatment during the period for which she was claiming disability, id., and her mental status examinations demonstrated "generally benign" findings. Id. Dr. Conradson had described plaintiff's anxiety as "chronic mild" for more than a year (normal mood, appropriate orientation, good fund of knowledge, answering simple questions, following three-step commands, no difficulty tracking conversation or abstracted similarities, normal judgment and content, normal attention span and concentration and normal recent and remote memory). AR 24, citing AR 518, 554. During that same time, plaintiff had had no acute exacerbations; she had been treated with a benzodiazepine, which had provided her complete relief of agitation; and she had had no complications of seizures or suicidal thoughts. Id., citing AR 518, 554. Moreover, the record did not show that she had increasing mental symptoms, changes in medication or test results that would support a finding of severe mental impairments. AR 24.

The administrative law judge found that plaintiff's anxiety disorder was not so severe as to meet or medically equal a listing, for four reasons. First, there was no evidence that any mental impairment caused more than minimal limitations of plaintiff's ability to perform basic mental work activities and thus, the impairment would be classified as non-severe. Second, the record did not disclose a longitudinal treatment history, outpatient treatment or inpatient hospitalizations during the relevant period of disability attributable to uncontrolled symptoms

or any outpatient mental health treatment during that same time, whereas plaintiff's mental status exams demonstrated "generally benign exam findings." AR 29-30. Third, the record did not disclose an increase in appointments necessitated by increasing mental symptoms, changes in medication or in clinical signs or test results that would support a finding of severe mental impairments. AR 24. Fourth, plaintiff had been taking a benzodiazepine for her chronic mild anxiety and had responded well to it. The administrative law judge found no indication that plaintiff's anxiety had worsened, so as to require changes or increases in medication. Id.

Reviewing plaintiff's four areas of mental functioning, the administrative law judge found that plaintiff had only mild limitations in the first three: understanding, remembering and applying information, interacting with others or in concentration persistent and pace. Id. In the fourth functional area of adapting or managing oneself, plaintiff had no limitations. AR 25. In addition, Dr. Wendorf never referred to plaintiff's anxiety as anything but "mild."

OPINION

At the outset, plaintiff contends that it was a mistake to rely exclusively on the opinion of Dr. Khorshidi, a non-examining state agency physician who reached her conclusions about plaintiff two years before plaintiff's administrative hearing. In response, the commissioner says that plaintiff forfeited this argument when she failed to set forth the evidence that Dr. Khorshidi considered, leaving both the commissioner and the court unable to determine whether evidence produced later is in fact "new" and "significant."

It is not necessary to decide whether plaintiff's failure to "set forth the evidence that Dr.

Khorshidi considered" is an adequate reason to ignore plaintiff's arguments about the significance of the doctor's evaluation. The conclusions she reached in 2015 were consistent with the evidence in the record showing that plaintiff's diagnostic tests did not reveal any acute or chronic abnormalities. Plaintiff has not cited any later evidence in the record showing that her condition worsened in later years, with the one exception that Dr. Conradson noted in April 2016 that plaintiff's left shoulder had been causing her moderate pain for more than a year, whereas he had noted only mild pain in her shoulder before then.

Dr. Chan evaluated plaintiff six months after Dr. Khorshidi had undertaken her analysis and had concluded that plaintiff could perform light work, with restrictions on climbing similar to those set out by Dr. Khorshidi. As the vocational expert found, under either set of restrictions (medium work or light work), plaintiff was capable of engaging in substantial gainful employment. If she could perform work at the medium exertional level, with the limitations assessed by the administrative law judge, she could work as a certified nurse assistant. If she could work only at the light exertional level, she could not work as a certified nurse assistant, but she could perform work as a ticket taker, cashier II or fast food worker. In either event, she would be employable.

Plaintiff contends that the administrative law judge erred in failing to take into consideration the effects of her cancer and its subsequent treatment, but she never identified her cancer as a basis for her disability claim. In fact, she continued to work a certified nurse assistant, handling work classified as "heavy," for almost six years after her cancer was first diagnosed.

However, plaintiff did claim fibromyalgia as a reason for her inability to work and she mentioned it during the administrative hearing, saying she had pain almost everywhere. The administrative law judge did not contest plaintiff's claim that she had fibromyalgia, but concluded that her plaintiff's statements about "the intensity, persistence and limiting effects of [her] symptoms [were] not consistent with the medical evidence and other evidence in the record." AR 27. The administrative law judge noted that plaintiff's fibromyalgia was controlled with over-the-counter NSAIDs. This was inaccurate at the time because Dr. Conradson had noted on April 22, 2015, that plaintiff's fibromyalgia was controlled by narcotics in addition to NSAIDs, AR 512. However, Dr. Sidhu took plaintiff off narcotic analgesics, Cymbalta and NSAIDS in August 2016, AR 760-62, and nothing in the record indicates that her fibromyalgia symptoms increased after that time. For the most part, plaintiff's doctors described her problems as generally stable and encouraged her to continue her walking regimen at least three to four times a week. AR 28.

There is no indication from any of the doctors she saw that she was less able to work when she left her job as a certified nurse assistant than she had been when she was working, assuming she took a less demanding job. During that time, from 2015 to 2017, her treating physicians consistently described her fibromyalgia, her degenerative joint disease and her left shoulder pain as "mild" or "moderate." In summary, I conclude that plaintiff has not shown that she is unable to handle medium level work with the adjustments identified by Dr. Khorshidi. This is not a case in which the administrative law judge relied on an outdated assessment after later evidence comes to light containing "new, significant medical diagnoses"

19

that could reasonably have changed the reviewing physician's opinion." Moreno v. Berryhill, 882 F.3d 722, 728 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); Stage v. Colvin, 812 F.3d 1121, 1125 (7th Cir. 2016) (holding that rehearing was required when a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment").

I turn next to plaintiff's argument that the administrative law judge did not justify the rejection of the opinions of Dr. Wendorf, the psychologist who undertook a consultative examination of plaintiff. Plaintiff notes that it was Dr. Wendorf's opinion that she was struggling with depression and anxiety in addition to her medical problems, including fibromyalgia, and that he also believed that she had only fair ability to understand, remember and carry out work instruction; poor ability to maintain concentration, attention and work pace; and only poor-to-fair ability to withstand routine work stress and adapt to changes. AR 533.

Plaintiff maintains that rejecting Wendorf's opinions required a thorough explanation that was not provided in this case, Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a nonexamining physician does not, by itself, suffice."), and Beardsley v. Colvin, 758 F.3d 843, 847 (7th Cir. 2014), in which the court of appeals held that "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await an explanation for this unusual step." In fact, the administrative law

judge gave a thorough, nine-paragraph explanation of the reasons for not accepting the entirety of Dr. Wendorf's opinion, four paragraphs of which were devoted to assessing the four functional areas of plaintiff's mental functioning. AR 24-25.

The administrative law judge found, as Dr. Wendorf had noted, that plaintiff had not had any outpatient hospitalizations or outpatient treatment for depression or anxiety, had responded well to the medication intended to treat her depression or anxiety and had "generally benign findings." AR 24. The administrative law judge observed that although plaintiff complained of disabling anxiety, nothing in the record supported her complaint. She had not had any inpatient hospitalization necessitated by uncontrolled symptoms; instead, her "chronic mild anxiety" had been treated for more than a year without any recent acute exacerbations. Id.

Of the four broad areas of mental functioning, Dr. Wendorf found that plaintiff had only mild limitations in three of the areas and none in the fourth (adapting or managing oneself). AR 24-25. The opinions of the two consulting psychologists, Deborah Pape and Stacy Fiore, did not support a different finding. Thus, it was not error for the administrative law judge to conclude that plaintiff had failed to establish that any of her medically determinable mental impairments had caused her more than "mild" limitation in any of the functional areas. AR 25. As Dr. Wendorf had noted in his report, it was his belief that plaintiff "would benefit from individual psychotherapy to help her with transition in her life and to help her remit some of these fairly mild psychiatric symptoms, which are due to the medical complaints.

In summary, I conclude that plaintiff has failed to show that the administrative law judge erred in concluding that plaintiff has no disabling impairments in the area of mental functioning.


ORDER

IT IS ORDERED that plaintiff Karen L. Brunette's motion for summary judgment, dkt. #15, is DENIED and the decision of defendant Andrew Saul, Commissioner of Social Security, denying plaintiff's application for disability benefits and supplemental security income is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 25th day of September, 2019.

BY THE COURT:


/s/
_____
BARBARA B. CRABB
District Judge